IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
CHATTANOOGA DIVISION

| | |
|---|---|
| LISA CHADWELL,<br><br>    Plaintiff,<br><br>v.<br><br>UNUM LIFE INSURANCE COMPANY OF AMERICA and UNUM GROUP CORP.,<br><br>    Defendants. | Civil Action No. 1:25-cv-223 |

**COMPLAINT FOR RECOVERY OF PLAN BENEFITS AND FOR THE ENFORCEMENT OF RIGHTS UNDER ERISA**

COMES NOW, Plaintiff, Lisa Chadwell, and makes the following representations to the Court for the purpose of obtaining relief from Defendants' refusal to pay Long-Term Disability ("LTD") benefits due under an employee benefits plan, and for Defendants' other violations of the Employee Retirement Income Security Act of 1974 ("ERISA"):

**JURISDICTION AND VENUE**

1. This Court's jurisdiction is invoked pursuant to 28 U.S.C. § 1337 and 29 U.S.C. § 1132(e) (ERISA § 502(e)). Plaintiff's claims "relate to" an "employee welfare benefits plan" as defined by ERISA, 29 U.S.C. § 1001 et seq., and the subject Employee Welfare Benefit Plan constitutes a "plan under ERISA."

2. The ERISA statute, at 29 U.S.C. § 1133, as well as Department of Labor regulations, at 29 C.F.R. § 2560.503-1, provide a mechanism for administrative or internal appeal of benefits denials. In this case, those avenues of appeal have been exhausted and this matter is now properly before this court for judicial review.

3. Venue is proper within the Eastern District of Tennessee pursuant to 29 U.S.C. § 1132(e)(2).

**PARTIES**

4. Plaintiff, Lisa Chadwell, (hereinafter "Plaintiff"), was at all relevant times, and is currently a resident of Hamilton County, Tennessee.

5. Defendant Unum Life Insurance Company of America ("Unum Life") is the underwriter of group LTD insurance policy number 618211 011, issued to Plaintiff's former employer, Olin Corporation, and is the party obligated to pay benefits and to determine eligibility for LTD benefits under the Plan.

6. Unum Life is an insurance company authorized to transact the business of insurance in this state, and may be served with process through the Commissioner of the Tennessee Department of Commerce and Insurance, 500 James Robertson Parkway, Suite 660, Nashville, Tennessee 37243-1131.

7. Defendant Unum Group Corporation ("Unum Group") is the parent company of Defendant Unum Life.

8. Defendant Unum Group exercises significant control over the policies and actions of Defendant Unum Life.

9. Defendant Unum Group is the employer of all persons who acted on behalf of Unum Life.

10. Defendant Unum Group may be served with process by and through its registered agent for service, Corporation Service Company, 2908 Poston Avenue, Nashville, TN 37203.

**FACTS**

11. Plaintiff was employed by Olin Corporation as an IT SAP Module Leader.

12. Olin Corporation maintained an LTD benefits plan ("the Plan") for the benefit of its employees.

13. LTD benefits under the Plan were funded by Unum Life policy number 618211 011.

14. Plaintiff is a participant or beneficiary of the Plan and is covered by the Policy that provides LTD benefits under the Plan.

15. The Plan defines disability as: "You are disabled when Unum determines that due to your sickness or injury: you are unable to perform the material and substantial duties of your regular occupation and are not working in your regular occupation or any other occupation[.]"

16. Plaintiff ceased work on or about August 30, 2022, while covered under the Plan, due to her multiple myeloma cancer diagnosis and subsequent treatments including a March 2023 stem cell transplant.

17. Plaintiff continues to suffer from ongoing sequelae of her multiple myeloma and medications/treatments for the cancer including, but not limited to, osteoarthritis, fatigue, anemia, chronic pain caused by lytic lesions, digestive issues, diarrhea, insomnia, Grover's Disease, and cognitive issues including poor memory, concentration, communication, learning ability, and decision-making ability.

18. Plaintiff has been and continues to be disabled as defined by the provisions of the Plan.

19. Plaintiff timely filed an application for LTD benefits under the Plan.

20. Defendants approved that application, and paid benefits until July 11, 2024.

21. As of July 9, 2024, Defendants denied Plaintiff's claim for ongoing LTD benefits, stating that she could perform her own occupation despite her medical conditions.

22. Plaintiff filed a timely appeal on January 3, 2025.

23. Plaintiff submitted with her appeal updated medical records, a medical opinion form from her oncologist, Dr. Frits Van Rhee, a cognitive function assessment report by Dr. Bahareh Talei, and a functional capacity evaluation report by Daniel Navarro, MPT, OCS, MTC.

24. The updated medical records contain objective findings and diagnostics, including a November 11, 2024 MRI and PET CT documenting the continued presence of lytic lesions in Mrs. Chadwell's hip bones and a March 14, 2023 MRI of the lumbar spine showing spondylosis and disc bulges. A recent oncology note describes that Mrs. Chadwell remains immunocompromised on treatment and receiving steroids, with a history of frequent infections. Because of her lower leg swelling most days, she received compression stockings and is recommended to elevate her legs when sitting.

25. Plaintiff also submitted a medical opinion form from her treating oncologist, Dr. Van Rhee, who explained Mrs. Chadwell has chronic fatigue and is unable to work at this time. Dr. Van Rhee states that Mrs. Chadwell is not to lift, push, or pull greater than 15 pounds. Dr. Van Rhee also opines that it is reasonable that Mrs. Chadwell's degree of pain, fatigue, or other limitations would interfere with her reliably attending an 8-hour workday, 40-hour workweek. Dr. Van Rhee further reports impairments with Mrs. Chadwell's concentration and memory, and opines that she has poor abilities of concentration, persistence, and pace; dealing with the stress of ordinary work; demonstrating reliability; persisting at assigned tasks; and timely completing tasks commonly found in work settings. Dr. Van Rhee further documents that Mrs. Chadwell suffers from hand tremors, impacting her ability to fine-manipulate, type, write, and grasp small objects.

26. To better understand how Plaintiff's medical conditions and side effects affect her cognitive abilities, Plaintiff also submitted the results of her cognitive function assessment (CFA) completed by Dr. Talei. Based on the results of the tests, which found that Mrs. Chadwell's cognitive ability falls within the borderline impaired range with significant impairments in both verbal and nonverbal memory and spatial intelligence, Dr. Talei concluded that Mrs. Chadwell had limitations in the following areas:

| Symptom / Impairment | Level of Functioning | | | |
|---|---|---|---|---|
| | Intact Functioning | Mild Impairment | Moderate Impairment | Severe Impairment |
| Ability to recall long term events with accuracy | ☐ | ☒ | ☐ | ☐ |
| Ability to remember and maintain current topic of conversation | ☐ | ☒ | ☐ | ☐ |
| Ability to remember to do important things (e.g., appointments, completing errands, etc.) | ☐ | ☐ | ☒ | ☐ |
| Ability to learn a new task | ☐ | ☐ | ☒ | ☐ |
| Ability to understand and follow detailed instructions | ☐ | ☒ | ☐ | ☐ |
| Ability to switch between tasks with ease | ☐ | ☐ | ☒ | ☐ |
| Ability to concentrate, persist, or maintain pace | ☐ | ☐ | ☒ | ☐ |
| Ability to make simple work-related decisions | ☐ | ☐ | ☒ | ☐ |
| Ability to complete a normal workweek without interruptions from physical and/or cognitive symptoms | ☐ | ☐ | ☒ | ☐ |
| Ability to perform at a consistent pace without an unreasonable number and length of rest periods | ☐ | ☐ | ☒ | ☐ |

| | | | | |
|---|---|---|---|---|
| Ability to deal with normative occupational stress (e.g., deadlines, meetings, etc.) | ☐ | ☐ | ☒ | ☐ |
| Ability to interact with others in socially appropriate manner | ☐ | ☐ | ☒ | ☐ |

27. Plaintiff's appeal also included the results of her functional capacity evaluation (FCE). As discussed more fully in the FCE report, the results confirm that Plaintiff is limited in several ways, including that she is restricted to occasional sitting at a desk and must be allowed to take rest breaks when needed (either lying down or in a reclined position) to moderate her fatigue and prevent further functional deterioration. Overall, the FCE shows:

> physical testing was hindered, primarily due to impaired aerobic and muscular endurance, but also due to a degenerative left knee. Observations made during today's examination include:
> - Fatigue in trunk muscles contributed to her inability to tolerate prolonged sitting or spending long periods on her feet.
> - Her ability to handle materials progressively declined due to weakening in multiple body regions. And
> - Weakness in her body and sharp heart increases (sometimes beyond 60% of her age-predicted heart rate maximum) required her to take many rest breaks, which became lengthier as testing progressed.

28. By letter dated February 3, 2025, Plaintiff submitted additional evidence in support of her claim, including updated medical records, an additional medical opinion form from her primary care provider, a vocational evaluation report, 4 letters from friends and family members detailing Plaintiff's medical condition and how it affects her daily life, sworn declaration from Plaintiff and her husband, and other relevant documents related to Unum's confirmed history of biased claims handling practices.

29. Tiffany Hayes, PA-C, Plaintiff's primary care provider, completed a medical opinion form in which she reviewed the results of Plaintiff's FCE and CFA and confirmed that she agreed with the findings based on her own evaluation and treatment of Plaintiff.

30. Plaintiff also submitted a vocational evaluation report by Ashley Johnson, MS, CRC, CLCP, who found that Plaintiff is unable to perform her own or any other transferrable occupation based on the combination of her symptoms and limitations as documented by treating providers and the objective testing she underwent. Ms. Johnson included the following rationales for why Ms. Chadwell is unable to work at any level:

- Ms. Chadwell's documented need to take frequent rest breaks eliminates her ability to maintain focus and attention at any occupation where her skills would transfer;
- Ms. Chadwell's documented cognitive impairments eliminate her ability to focus, deal with work stress, and complete tasks in a timely manner, which are all requirements of her own or any transferable occupation;
- Ms. Chadwell's documented inability to work a 40-hour workweek and need to be absent from work on a chronic basis would not be tolerated by any employer;
- Ms. Chadwell's ability to only sit occasionally, or up to 1/3 of the workday, would eliminate the ability to perform sedentary work; and
- Ms. Chadwell's inability to lift and carry up to 10 pounds eliminates her ability to perform sedentary work, which is the least physically demanding level of work in the economy.

31. On February 24, 2025, Unum sent Plaintiff evidence it had generate on appeal. This included two in-house file-reviewing physician reports that state that Plaintiff has no

restrictions or limitations preventing her from working full-time in her own occupation. Unum stated that Plaintiff had until March 11, 2025 to submit her response.

32. On March 11, 2025, Plaintiff requested an extension of 30 days in order to finish gathering the necessary information to respond to Unum's reviews.

33. On the same day, Unum denied Plaintiff's extension request and stated that the response deadline remained March 11, 2025. Unum did not give a reason for denying the request for extension.

34. Given that Unum denied her extension request, by letter dated March 11, 2025, Plaintiff submitted new evidence she received in response to Unum's reviews and requested an additional 15 days to respond to Unum's reviews in full. Plaintiff stated that she agreed to toll Unum's decision deadline by the amount of days it takes her to submit her full response.

35. Plaintiff's new evidence included a new medical opinion form by Dr. Van Rhee, a CFA addendum by Dr. Talei, and additional relevant information concerning the two in-house, file-reviewing physicians Unum received appeal reviews from.

36. Dr. Van Rhee's medical opinion form stated that he reviewed the results of Ms. Chadwell's CFA and FCE and reported that he agreed with the findings of each test based on his own evaluation and treatment of Ms. Chadwell.

37. The CFA addendum by Dr. Talei responded directly to Unum's file-reviewing neuropsychologist who reviewed the CFA results and disagreed that they were a valid measure of Plaintiff's functionality. Dr. Talei explained and provided supporting authority for her reasoning that the selected measures in her CFAs are widely recognized and accepted approaches in neuropsychological assessments. In sum, Dr. Talei explained that Unum's review is not supported by the medical, neuropsychological, or functional evidence.

38. On March 14, 2025, Plaintiff submitted additional evidence she had gathered in response to Unum's file-reviews. Her evidence was a FCE rebuttal letter by Daniel Navarro, MPT, OCS, MTC, the examiner who conducted the FCE in her case. Mr. Navarro reviewed and explained why Unum's internal medicine reviewer's opinions were incorrect. In conclusion, he stated, "with a reasonable degree of certainty, if Ms. Chadwell attempts to sustain full-time desk work, she will further compromise her already significantly limited quality of life."

39. Despite the multitude of evidence from treating providers and objective testing showing that Plaintiff is disabled, by letter dated March 20, 2025, Unum denied Plaintiff's claim relying on the same two in-house, file-reviewing physician reviews Plaintiff provided rebuttal evidence to. Unum did not consult with a health care professional in reviewing Plaintiff's responsive evidence.

40. The March 20, 2025 letter confirmed the Plaintiff exhausted her administrative remedies and had a right to bring a lawsuit under ERISA § 502(a) to challenge the denial of her benefits.

41. Plaintiff has exhausted her required administrative remedies with respect to the LTD claim.

42. The entities that made the decisions to deny benefits would pay any benefits due out of their own funds.

43. The entities that made the decisions to deny benefits were under a perpetual conflict of interest because the benefits would have been paid out of their own funds.

44. The entities that made the decisions to deny benefits allowed their concern over their own funds to influence their decision-making.

45. Unum's conflict of interest and bias is evident in the fact that it establishes monthly financial targets that encourage and incentivize its claims handlers to terminate a specified number of claims every month.

46. The monthly financial targets for denying claims are called "recovery plans," "recovery guidance," or words to that effect, and are provided by Unum's finance department to Unum's Assistant Vice Presidents and Directors who supervise and conduct claims handling.

47. The monthly targets, or "recovery plans," include the count of total claims that should be recovered.

48. Internal documents reveal that financial targets and goals for claim closures are set at the unit level and that there are goals set for open claim recoveries (i.e., denying an open claim) per day. (*See* Exhibit 1, Weekly Tracking Reports).

49. In order to receive bonuses under Unum's incentive program, Unum employees are evaluated against certain criteria, which include planned claim terminations, expected liability acceptance rates, and anticipated reopen rates. (*see e.g.*, Exhibit 2, ID Director Scorecards).

50. Plaintiff's counsel recently took the deposition of the Assistant Vice President, Marianne Justin, who was the Unum AVP over the Director and the DBS who evaluated Plaintiff's claim. Ms. Justin confirmed that she received "financial guidance" each month. (*See* Exhibit 3, selected excerpts from the Deposition of Marianne Justin, p. 47:23-51:6).

51. Ms. Justin also received a Weekly Tracking Report each Monday that contained new financial target numbers for her team. *Id.* at, 103:11-18. Ms. Justin explained that she shares the Weekly Tracking Reports with her team in weekly meetings on each Tuesday. *Id.* at, 80:13-82-21; 99:15-100:22.

52. Directors in AVP Justin's team are expected to be familiar with how the Weekly Tracking Reports are formatted, how they work, and what their data means for their team. *Id.* at, 103:11-105:9.

53. AVP Justin confirmed that whether Unum's AVPs meet the financial metrics is part of their performance evaluation. *Id.* at, 136:9-16.

54. Ms. Justin provided additional testimony and referred to additional documents that are relevant to Unum's conflict of interest, but that testimony and evidence is currently designated "confidential."

55. Defendants targeted Plaintiff's claim for termination in order to meet their financial goals.

56. Defendants' targeting of Plaintiff's claim for denial taints all evidence it developed during the review of her claim as the review was designed to reach the result of a denial, not an impartial weighing of the evidence.

57. Defendants have acted under a policy to take advantage of the potential applicability of ERISA to claims.

58. The Defendants' decision-making process violated ERISA by failing to give the Plaintiff a full and fair review of the claim.

59. The Defendants' decision-making process violated the terms of the applicable ERISA Plans and ERISA law and regulations.

60. The Defendants' decision to deny benefits was wrong under the terms of the Plan and under ERISA, and was arbitrary and capricious.

# FIRST CAUSE OF ACTION
# FOR PLAN BENEFITS AGAINST THE DEFENDANT
# PURSUANT TO 29 U.S.C. §§ 1132(a)(1)(B)

PLAINTIFF incorporates the allegations contained in the prior paragraphs as if fully stated herein and says further that:

61. Under the terms of the Plan, Defendants agreed to provide Plaintiff with LTD benefits in the event that Plaintiff became disabled as defined by the Plan.

62. Plaintiff is disabled and entitled to benefits under the terms of the Plan.

63. Defendants failed to provide benefits due under the terms of the Plan, and these denials of benefits to Plaintiff constitute breaches of the Plan.

64. The decisions to terminate benefits were wrong under the terms of the Plan.

65. The decisions to terminate benefits and decision-making processes were arbitrary and capricious.

66. The decisions to deny benefits were not supported by substantial evidence in the record.

67. As a direct and proximate result of the aforementioned conduct of the Defendants in failing to provide benefits for Plaintiff's disability, Plaintiff has been damaged in the amount equal to the amount of benefits to which she would have been entitled to under the Plan.

68. As a direct and proximate result of the aforementioned conduct of the Defendants in failing to provide benefits for Plaintiff's disability, Plaintiff has suffered, and will continue to suffer in the future, damages under the Plan, plus interest and other damages, for a total amount to be determined.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this Court grant her the following relief in this

case:

**On Plaintiff's First Cause of Action**:

1. A finding in favor of Plaintiff against Defendants;

2. Damages in the amount equal to the disability income benefits to which she was entitled through date of judgment, for unpaid benefits pursuant to 29 U.S.C. § 1132(a)(1)(B);

3. Prejudgment and postjudgment interest;

4. An Order requiring the Plan or appropriate Plan fiduciary to pay continuing benefits in the future so long as Plaintiff remains disabled under the terms of the Plan.

5. An Order requiring Plan or appropriate Plan fiduciary to provide Plaintiff with any other employment benefits to which she would be entitled pursuant to a finding that she is disabled under the Plan or under any other employee welfare benefit plan;

6. Plaintiff's reasonable attorney fees and costs; and

7. Such other relief as this court deems just and proper.

Plaintiff further requests that the Court order Defendants to provide to Plaintiff with a bound copy of the ERISA record consecutively paginated.

Dated this 10th day of July, 2025.

Respectfully submitted,

ERIC BUCHANAN & ASSOCIATES, PLLC
ATTORNEYS FOR PLAINTIFF

BY: /s Audrey C. Dolmovich
Audrey C. Dolmovich (BPR #035972)
Kaitlyn E. Barciszewski (BPR #041568)
414 McCallie Avenue
Chattanooga TN 37402
(423) 634-2506
FAX: (423) 634-2505